**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**ROBERT JAMAR FIELDS**                                                      **PETITIONER**

**v.**                         **NO. 4:20-cv-00351-KGB-PSH**

**DEXTER PAYNE**                                                         **RESPONDENT**

<u>RECOMMENDATION</u>

<u>INSTRUCTIONS</u>

The following Recommendation has been sent to United States District Judge Kristine G. Baker. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

DISPOSITION

I. <u>INTRODUCTION</u>. In this case, petitioner Robert Jamar Fields ["Fields"] challenges his convictions by means of a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254. He raises five claims in the petition. First, he is actually innocent. Second, Fields' right to due process was violated when the prosecution suppressed the identity of a perpetrator. Third, Fields' right to due process was violated when the prosecution allowed a witness to give false testimony. Fourth, Fields' right to due process was violated when the prosecution withheld evidence that one of the victims was working as a confidential informant. Last, Fields failed to receive effective assistance of counsel. It is recommended that the petition be dismissed. The claims are without merit, were reasonably adjudicated by the state courts, are procedurally barred from federal court review, or otherwise cannot be considered.

II. <u>BACKGROUND</u>. On June 20, 2015, Jennifer New ["New"], Blake Pepper ["Pepper"], and their child were robbed at gunpoint by three men, one of whom New and Pepper recognized but only knew as "Dee" or "D." During the robbery, New was shot in the leg. An investigation failed to identify any suspects.

New eventually came to believe that Fields was one of the men who participated in the robbery. New also came to believe that she had been shot by Fields. The information was reported to law enforcement officers, and Fields was charged in an Arkansas state trial court with offenses arising from his involvement in the robbery and shooting.

III. STATE AND FEDERAL COURT PROCEEDINGS. Fields was tried on July 26, 2017, a trial during which he was represented by Daren Nelson ["Attorney Nelson"]. See Docket Entry 78-2 [Exhibit A1] and 78-3 [Exhibit A2]. Fields was identified by New as the person who shot her. Pepper, though, was unable to identify Fields as one of the assailants. Sergeant Scott Harwell ["Sergeant Harwell"] testified that "Dee" or "D" had come to be identified as Markeitheon Dee Turner ["Turner"] and expected Turner to be charged for his involvement in the robbery and shooting. The trial concluded when the jury convicted Fields.

Fields appealed his convictions. The claims he raised on appeal included the following: the trial court erred by denying a motion in limine to exclude New's pre-trial identification of Fields, the trial court erred by allowing the prosecution to misstate the law with respect to parole eligibility, and the trial court erred by failing to exercise its discretion in sentencing Fields to consecutive terms of imprisonment.

During the course of Fields' direct appeal, Turner pleaded guilty to offenses arising from his involvement in the robbery and shooting. During a November 9, 2017, change of plea/sentencing hearing, Turner was asked about his role in the incident, a question that gave rise to the following exchange:

> THE COURT: Tell me your role in all that.
>
> MR. TURNER: I really can't remember. I was under the influence of drugs.
>
> THE COURT: This involved the couple?
>
> MR. ROGERS: Yes, Your Honor, the couple that were parked in their own driveway, Mr. Pepper and Ms. New. It was three individuals, Robert Fields, this defendant who was mentioned repeatedly in the trial of Mr. Fields.
>
> THE COURT: He was the only one that they knew.
>
> MR. ROGERS: The only identification was this person and then in the course of a contact with them sitting in their own driveway a shot was fired into the vehicle. I don't recall the items that were stolen ... a cell phone and some clothes. There was a bag that they took because they suspected there may have been some marijuana in it, but it was just a bag of clothes. Ms. New sustained a serious leg injury as a result of the bullet. It required extensive medical care.
>
> THE COURT: Is any of that coming back to you?
>
> MR. TURNER: A little bit.
>
> THE COURT: Which part?

MR. TURNER: I can't really remember.

MR. BEST: Do you remember them coming up in the driveway?

MR. TURNER: Yes.

THE COURT: You were in the driveway?

MR. TURNER: Yes, sir.

MR. ROGERS: He walked around from behind the house as I recall the testimony.

THE COURT: What do you recall about that night?

MR. TURNER: I can't remember.

THE COURT: Do you dispute the State's evidence?

MR. TURNER: Yes, sir.

THE COURT: You do?

MR. BEST: Do you agree they would be able to prove that were there? [Sic]

MR. TURNER: I agree.

THE COURT: All right, I'll accept your plea and it will be the judgment of the Court that you are in fact guilty of robbery as an accomplis and as an accomplis to the battery in the first degree. I think it was the co-defendant that did the shooting. [Sic].

MR. ROGERS: Mr. Fields was the shooter.

See Docket Entry 67-2 [Exhibit 17] at CM/ECF 6-7.

During the course of Fields' direct appeal, he filed a trial court petition for writ of error coram nobis with the assistance of attorneys Michael Kaiser and William James ["Attorneys Kaiser and James"]. In an amended petition, see Docket Entry 66-2 [Exhibit 8], Fields maintained that his convictions should be set aside for two reasons. First, Fields is actually innocent because on November 22, 2017, Turner signed an affidavit in which, inter alia, he admitted participating in the robbery and shooting with Derek Brown ["Brown"] and an unidentified third person. See Docket Entry 59-3 [Exhibit 1]. Turner represented that Brown had shot New and that Fields was not involved in the incident. Second, Fields' right to due process was violated when the prosecution suppressed Turner's identity.

Fields also filed a state appellate court motion to stay briefing in his direct appeal and reinvest jurisdiction in the trial court. He asked that jurisdiction be reinvested in the trial court so that it could consider his petition for writ of error coram nobis. The Arkansas Court of Appeals granted the motion and reinvested jurisdiction in the trial court.

The trial court thereafter conducted a hearing on Fields' petition for writ of error coram nobis, a hearing during which Fields, Attorney Nelson, Turner, and Sergeant Harwell testified. Turner was questioned about his affidavit, and he testified, in part, as follows:

Q. When you plead guilty the name Robert Fields was mentioned in your plea, but you didn't say anything about him not being involved at that time isn't that right?

A. Yes, sir.

Q. You stated you couldn't remember, you were under the influence of drugs?

A. Yes, sir, it's been so long ago.

[...]

Q. So on November 9th you testified you couldn't remember what happened during this incident, yet thirteen days later on November 22nd you signed that Affidavit where you said Robert Fields wasn't involved. Is that right?

A. No, sir.

Q. That's not right? Did you sign that Affidavit that Mr. Kaiser just showed you?

A. Yes.

Q. You signed that and is it dated November 22nd on the back of it?

A. Yes.

Q. Thirteen days after you told the Court you couldn't remember what happened, you signed that Affidavit of multiple paragraphs detailing what happened. Is that right?

A. I just know he wasn't there.

<u>See</u> Docket Entry 66-5 [Exhibit 11] at CM/ECF 27-28. Turner continued to

be questioned about his affidavit, which led to the following exchange:

> Q. [...] What I want to know was at the time you were giving your plea to these crimes from that podium Mr. Turner, when you told me you didn't remember were you lying?
>
> A. No, sir.
>
> Q. Were you lying?
>
> A. No, sir.
>
> Q. Did you have an epiphany between that time and November 22nd?
>
> A. I just know he [<u>i.e.</u>, Fields] didn't have nothing to do with it.

<u>See</u> Docket Entry 66-5 [Exhibit 11] at CM/ECF 31-32.

Sergeant Harwell was questioned about how and when he learned

that "Dee" or "D" and Turner are the same person. <u>See</u> Docket Entry 66-5

[Exhibit 11] at CM/ECF 39-53. Sergeant Harwell testified that he was

contacted by New, and she told him that she had learned "Dee" or "D" and

Turner are the same person by viewing Turner's photograph on a website

maintained by the Union County Sheriff's Office. The information was

conveyed to Sergeant Harwell sometime between April 29, 2017, and the

day of Fields' trial, <u>i.e.</u>, July 26, 2017.

The trial court denied the petition for writ of error coram nobis. <u>See</u> Docket Entry 66-4 [Exhibit 10]. Fields filed an amended notice of appeal and joined his previously raised claims on appeal with a claim that the trial court erred when it denied his petition for writ of error coram nobis.

During the course of Fields' direct appeal, he filed a second state appellate court motion to stay briefing in the appeal and reinvest jurisdiction in the trial court. <u>See</u> Docket Entry 78-6 [Exhibit C]. He asked that jurisdiction be reinvested in the trial court so that it could consider two additional issues. First, Fields is actually innocent because on August 12, 2018, New signed an affidavit ["2018 affidavit"] in which, <u>inter alia</u>, she expressed doubt as to whether her assailant was indeed Fields. <u>See</u> Docket Entry 59-4 [Exhibit 2]. Second, Fields' right to due process was violated when law enforcement officers discouraged New from testifying at the hearing on Fields' petition for writ of error coram nobis. The state Court of Appeals denied the motion. <u>See</u> Docket Entry 78-8 [Exhibit E].

The state Court of Appeals eventually affirmed Fields' convictions. <u>See</u> <u>Fields v. State</u>, 2019 Ark. App. 162, 574 S.W.3d 201 (2019). In the same decision, the court affirmed the denial of his petition for writ of error coram nobis.

Fields then filed a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37 ["Rule 37 petition"]. See Docket Entry 66-6 [Exhibit 12]. Fields maintained in the petition that his convictions should be set aside for two reasons. First, Fields is actually innocent because Turner has identified Brown as the person who shot New, and New now has doubt about her identification of Fields. Second, Fields failed to receive effective assistance from Attorney Nelson at trial and from Attorneys Kaiser and James during the error coram nobis proceeding. In support of the second claim, Fields specifically alleged that Attorney Nelson and Attorneys Kaiser and James were ineffective in the following respects:

> [...] Initially, Nelson failed to investigate the defense of third party culpability that exonerates Fields. [Footnote omitted]. Although the State produced discovery that identified one of the other perpetrators as "D," and included an address where "D" lived, Nelson did not attempt to locate "D." [...] Further, after Turner (who New eventually identified as "D") admitted Brown shot New, Fields' post-conviction counsel failed to subpoena Brown to the post-conviction hearing. In addition, although New expressed doubt about her identification of Fields in light of Turner's statement implicating Brown, and opined that Brown could be the shooter, Fields' post-conviction counsel failed to subpoena New. Since Fields' post-conviction counsel failed to subpoena both Brown and New, the Court did not hear testimony from the most critical witnesses who substantiate the newly discovered defense of third party culpability.

Nelson also failed to adequately defend Fields against New's identification testimony in numerous respects. Nelson failed to investigate and/or present evidence and/or testimony that would discredit New's eyewitness identification of Fields. [Footnote omitted]. Nelson failed to investigate New's claim that she attended school with Fields from elementary to high school. [...] Investigation would have belied that claim. Further, a growing body of literature suggests that purported eyewitness identifications often produce wrongful convictions. [Footnote omitted]. Also, New's identification of Fields was cross-racial, decreasing the likelihood of accuracy. Nelson also failed to call witnesses who could have impeached New's testimony. [Footnote omitted]. Nelson also failed to object to improper argument in the prosecutor's opening statement, [footnote omitted], which bolstered New's credibility.

Nelson also failed to move to suppress the identification (and an in-court identification) pre-trial, failed to constitutionalize the issues underlying his motion to exclude the identification, and failed to argue that the taint of the prior identification rendered an in-court identification unreliable. He also failed to object to the in-court identification on that basis, which rendered this error unreviewable on direct appeal. He also failed to invoke Rule 403 of the Arkansas Rules of Evidence, and also did not request safeguards so the jury would not learn Fields was in jail. He did not conduct <u>voir dire</u> regarding the defense of mistaken identity, nor did he proffer a jury instruction regarding identification testimony.

Nelson also committed sentencing errors. Nelson did not investigate and/or present any mitigating evidence during the penalty phase, even though Fields is an orphan. [Footnote omitted]. Further, he failed to object to the prosecutor's misstatements regarding parole eligibility, [footnote omitted], and did not proffer AMCI 2d 9112 [footnote omitted].

<u>See</u> Docket Entry 66-6 [Exhibit 12] at CM/ECF 7-9.

The State of Arkansas ("State") moved to dismiss Fields' Rule 37 petition because it exceeded the maximum number of pages allowed by state law. In response to the State' motion, Fields filed a motion for leave to file an amended, overlength petition for post-conviction relief. The trial court denied the Rule 37 petition and, in the same decision, denied his motion for leave to file an amended, overlength petition for post-conviction relief. See Docket Entry 67-1 [Exhibit 16].

Fields appealed the trial court's decision and, during the appeal, began the case at bar by filing a petition pursuant to 28 U.S.C. 2254 ["2254 petition"]. He raised two claims in the petition. First, Fields' right to due process was violated when the prosecution presented unreliable eyewitness testimony as New's pre-trial identification of Fields was unduly suggestive. Second, Fields failed to receive effective assistance from Attorney Nelson at trial and from Attorneys Kaiser and James during the error coram nobis proceeding.

Fields characterized his 2254 petition as a "protective" petition because he was concerned about the expiration of the one-year limitations period for filing a timely petition. He asked that this case be stayed and held in abeyance until he exhausted his state remedies. His request was granted, and the case was stayed pending the outcome of his appeal.

The state Court of Appeals eventually affirmed the denial of Fields' Rule 37 petition. See Fields v. State, 2020 Ark. App. 213, 599 S.W.3d 351 (2020). In the same decision, the court affirmed the denial of his motion for leave to file an amended, overlength petition for post-conviction relief.

Fields then asked that the stay in the case at bar be extended so he could seek additional state court review. His request was granted, and the stay was extended. The stay remained in effect until October 6, 2020, when it was lifted. At that point, this case began in earnest.

Fields amended his initial 2254 petition on two occasions. In his final offering, a ninety-six-page second amended petition filed on December 22, 2021, he offered five claims. See Docket Entry 75. First, he is actually innocent. Second, Fields' right to due process was violated when the prosecution suppressed Turner's identity. Third, Fields' right to due process was violated when the prosecution allowed Sergeant Harwell to give false testimony at trial. Fourth, Fields' right to due process was violated when the prosecution withheld evidence that New was working as a confidential informant. Last, Fields failed to receive effective assistance from Attorney Nelson at trial and from Attorneys Kaiser and James during the error coram nobis proceeding for the following thirteen reasons [hereinafter "sub-claims"]:

[A] Attorney Nelson failed to file and litigate a motion to suppress New's identification of Fields;

[B] Attorney Nelson failed to consult with and call an expert in eyewitness identifications to educate the jury on the inherent unreliability of New's identification of Fields;

[C] Attorney Nelson failed to seek a jury instruction that explained the scientific research regarding eyewitness identifications;

[D] Attorney Nelson failed to complete the impeachment of New with her prior inconsistent statements;

[E] Attorney Nelson failed to impeach Sergeant Harwell regarding his false testimony, his failure to adequately investigate and arrest Turner sooner, and the deficiencies in Sergeant Harwell's investigation of the robbery and shooting;

[F] Attorney Nelson failed to investigate evidence of third-party guilt and evidence of Fields' background;

[G] Attorney Nelson failed to request a mistrial once Sergeant Harwell disclosed Turner's identity;

[H] Attorney Nelson failed to consult with and present a police practices expert or uncover New's status as a confidential informant;

[I] Attorney Nelson failed to request safeguards to prevent the jury from learning that Fields had been in jail;

[J] Attorney Nelson failed to object to the prosecution's misstatements of the law with respect to parole eligibility;

[K] Attorney Nelson failed to proffer a jury instruction to allow the jury to recommend concurrent sentencing;

14

[L] Attorneys Kaiser and James failed to subpoena New, Field's sister, and Brown for the hearing on the petition for writ of error coram nobis; and

[M] Attorneys Kaiser and James failed to investigate Turner's background and criminal history.

Respondent Dexter Payne ["Payne"] filed a response to the second amended petition on February 14, 2022. See Docket Entry 78. In the response, he asked that the petition be dismissed for multiple reasons. The reasons included the following: first, one or more of Fields' claims have no merit; second, some of his claims were reasonably adjudicated by the state courts; third, some of the claims are procedurally barred from federal court review; and last, sub-claims 5[L] and 5[M]—sub-claims in which Fields challenges Attorneys Kaiser and James' representation—are not cognizable in a petition pursuant to 28 U.S.C. 2254.[1]

IV. FIELDS' FIRST CLAIM AT BAR. Fields' first claim at bar is that he is actually innocent. See Docket Entry 75 at CM/ECF at 16-37. In support of the claim, he maintains the following:

---

[1]    Payne also maintained that all, or parts, of claims one, two, three, four, and five are barred by the one-year statute of limitations. Payne so maintained because Fields failed to raise the claims in his initial, "protective" 2254 petition and the claims do not related back to that timely filed petition. The undersigned declines the invitation to wade into the quagmire that is Payne's assertion of limitations.

On March 31, 2022, Fields filed a lengthy reply to Payne's response. In the reply, Fields addressed Payne's assertions. See Docket Entry 85.

Turner admitted that he participated in the robbery and shooting and identified Brown as the person who shot New. Turner represented that Fields was not involved in the incident and, in fact, Turner has never met Fields and cannot recognize him from a photograph. Turner is a "reliable witness," <u>see</u> Docket Entry 75 at 18, who has "no incentive to lie for Fields; on the contrary, in coming forward with the truth, Turner also identified a previously unknown participant in the crime ..." <u>See</u> Docket Entry 75 at CM/ECF 16. In support of the assertions, Fields offers Turner's affidavit.

New has doubt about her identification of Fields. New believes Turner's representations that he does not know Fields, and Fields was not the person who shot New. New also believes Turner's representation that Brown could have been involved in the robbery and shooting and could have been the person who shot New. In support of the assertions, Fields offers New's 2018 affidavit.

Other, new evidence eviscerates New's identification of Fields. In support of the assertion, Fields offers a declaration signed by New on November 5, 2021, ["2021 declaration"]; Facebook messages New exchanged with Fields' sister after Fields' trial; a declaration signed by Pepper; scientific evidence relevant to eyewitness identifications in general, and New's identification of Fields specifically; and a declaration by Alicia Rodgers, who was New's friend at, or about, the time of the robbery and shooting.

Other, new evidence corroborates Fields' claim of actual innocence. Fields supports the assertion by offering a number of declarations from people who knew New and Fields at, or about, the time of the robbery and shooting.

The investigation into the robbery and shooting was seriously flawed. Fields supports the assertion with a report prepared by a law enforcement expert.

It is Fields' contention that New's testimony was the sole evidence tying Fields to the robbery and shooting. Fields maintains that New's testimony is rebutted by Turner's "irrefutable" testimony, <u>see</u> Docket Entry 75 at CM/ECF 35; New's own admissions; and other, new evidence. Fields maintains that a reasonable juror, viewing all of the evidence, would find Field is actually innocent.

Payne maintains that Fields raised the first claim at bar in his petition for writ of error coram nobis. The claim raised in that petition was predicated upon Turner's affidavit. The claim was rejected on the merits by the trial court and the state Court of Appeals. Payne maintains that Fields then attempted to re-litigate the first claim at bar in his Rule 37 petition. The claim raised in that petition was predicated upon New's 2018 affidavit. The trial court rejected the claim on the merits and, alternatively, on a procedural ground. The state Court of Appeals affirmed the denial of the Rule 37 petition but did so without addressing the claim. Instead, the state Court of Appeals affirmed the denial of the petition solely on the procedural ground relied upon by the trial court. It is Payne's contention that in reviewing the first claim at bar, deference should be accorded the determinations made of the claims Fields raised in his petition for writ of error coram nobis and Rule 37 petition.

Fields disagrees. He maintains that the first claim at bar should be considered <u>de</u> <u>novo</u> as it was never adjudicated on the merits by the state courts. He so maintains because there is "no vehicle or avenue for an actual innocence claim, based upon new evidence of actual innocence, in Arkansas state court [...]" <u>See</u> Docket Entry 85 at CM/ECF 24.

The questions raised by Fields' first claim at bar are involved, but this much is clear: he never presented the claim in full to the state courts. The undersigned will not attempt to answer the questions that necessarily follow because most of them lead to the same destination: considering the claim on the merits pursuant to <u>Herrera v. Collins</u>, 506 U.S. 390 (1993).[2]

In arriving at that destination, the undersigned notes that the United States Supreme Court has not decided whether a petitioner may be entitled to habeas relief on the basis of a freestanding claim of actual innocence. <u>See</u> <u>McQuiggin v. Perkins</u>, 569 U.S. 383 (2013). <u>See</u> <u>also</u> <u>Feather v. United States of America</u>, 18 F.4th 982 (8th Cir. 2021). If there is such a claim, the threshold would be "extraordinarily high," <u>see</u> <u>Herrera v. Collins</u>, 506 U.S.

---

[2]     The questions include the following: does the State have a procedure by which Fields could have raised a freestanding claim of actual innocence? If so, is his first claim at bar procedurally barred from federal court review because he did not present the claim in full to the state courts? If the State does not have a procedure by which Fields could have raised a freestanding claim of actual innocence, can Fields now offer evidence in connection with the claim at bar that he could have discovered years ago but failed to present to the state courts? As to some of those questions, <u>Perry v. Norris</u>, 879 F.Supp. 1503 (E.D. Ark. 1995), provides some insight.

at 417, and require more convincing proof of innocence than the "gateway" standard that allows for the consideration of an otherwise procedurally defaulted claim upon a showing of actual innocence, <u>see</u> <u>House v. Bell</u>, 547 U.S. 518 (2006). The threshold would require a showing of new facts which "unquestionably establish" a petitioner's innocence. <u>See</u> <u>Schlup v. Delo</u>, 513 U.S. 298, 317 (1995). <u>See</u> <u>also</u> <u>Cornell v. Nix</u>, 119 F.3d 1329 (1997).

The undersigned has reviewed the record in this case. For the reasons that follow, the undersigned is not persuaded that Fields can cross the <u>Herrera</u> threshold, assuming such a threshold exists.

A. <u>Turner's affidavit</u>. More than two years after the robbery and shooting, Turner pleaded guilty to charges arising from his involvement in the incident. During a change of plea/sentencing hearing, he admitted that he could remember nothing about the incident because he was "under the influence of drugs." <u>See</u> Docket Entry 67-2 [Exhibit 17] at CM/ECF 6. When details of the incident were provided to him, he reported that "[a] little bit" of it was coming back to him. <u>See</u> <u>Id</u>. When asked what part, he replied, "I can't really remember." <u>See</u> <u>Id</u>. Because solemn declarations in open court carry a strong presumption of verity, <u>see</u> <u>Blackledge v. Allison</u>, 431 U.S. 63 (1977), it could be reasonably accepted that he remembered nothing about the incident.

Thirteen days after Turner represented that he could remember nothing about the robbery and shooting, he signed an affidavit attesting to the most important details of the incident. For instance, he remembered that it was Brown who shot New, and Fields was "not present at this incident at all." See Docket Entry 59-3 [Exhibit 1] at CM/ECF 1.

Turner later testified during a hearing on Fields' petition for writ of error coram nobis. When Turner was given the opportunity to explain how he came to remember the most important details about the robbery and shooting, he made no attempt to offer any explanation.

The trial court rejected Turner's affidavit and testimony because he was "completely without credibility." See Docket Entry 66-4 [Exhibit 10] at CM/ECF 2. The state Court of Appeals held a similar view, noting that his testimony was "ever changing." See Fields v. State, 574 S.W.3d at 211.

As will be more fully developed below, 28 U.S.C. 2254(d) mandates the granting of deference to the state courts' adjudication of a claim. Deference is undoubtedly due as well to their adjudication of some part of a claim, here, Turner's affidavit. Although the undersigned is making a de novo review of the first claim at bar, their treatment of the affidavit will not be ignored. Their treatment of it was not an unreasonable determination of the facts in light of the evidence presented.

Turner testified during the change of plea/sentencing hearing that he could remember nothing about the robbery and shooting and could offer nothing to rebut the prosecution's version of what occurred during the incident. The trial court, and later the state Court of Appeals, could and did accept as true his solemn declarations in open court and find that he could remember nothing about the incident. The courts could and did also find that he was without credibility when, a mere thirteen days later, he supposedly could remember the most important details about the incident. Their findings are not unreasonable.

Moreover, Turner failed to offer any explanation for how he came to remember the most important details about the robbery and shooting. The undersigned is not prepared to say that his affidavit would be viewed differently had he offered some explanation for his ability to remember those details, but his lack of an explanation does nothing to alleviate the reasonable, serious doubt one can have about his affidavit.

B. New's 2018 affidavit. More than a year after Fields' trial, New signed an affidavit in which she represented, inter alia, that she has doubt about her identification of Fields. She represented that Brown "could have been the shooter," and Fields "may not" be the person who shot New. See Docket Entry 59-4 [Exhibit 2] at CM/ECF 1-2.

Fields offered New's 2018 affidavit as a part of a third-party culpability claim in Fields' Rule 37 petition. The trial court denied the petition and found that New's identification of Fields was "not recanted." See Docket Entry 67-1 [Exhibit 16] at CM/ECF 6. The state Court of Appeals affirmed the denial of the petition but did so on a procedural ground.[3]

The undersigned is making a de novo review of the first claim at bar. Although the state Court of Appeals never addressed New's 2018 affidavit, the trial court did. The trial court's treatment of the affidavit will not be ignored, and the undersigned views the affidavit as the court did.

A recantation involves the withdrawing or renouncing of prior testimony. See Black's Law Dictionary (11th ed. 2019). Like the trial court, the undersigned finds that New's 2018 affidavit does not involve a recantation of her trial testimony as she did not withdraw or renounce her testimony. Specifically, she did not definitively state that she was not shot by Fields, nor did New state that Fields was not involved in the robbery and shooting. New instead couched her affidavit in terms of possibilities, e.g., Brown "could have been the shooter," and New "may not" have been shot by Fields. See Docket Entry 59-4 [Exhibit 2] at CM/ECF 1-2.

_____

[3]   Fields also offered New's 2018 affidavit as a part of Fields' second state appellate court motion to stay briefing and reinvest jurisdiction in the trial court. The state Court of Appeals denied the motion without comment.

C. Other, New Evidence. Fields offers other, new evidence to support his first claim at bar. The evidence includes New's 2021 declaration; her Facebook messages; Pepper's declaration; scientific evidence relevant to eyewitness identifications; declarations from people who knew Fields and New at, or about, the time of the robbery and shooting; and a report prepared by a law enforcement expert.

First, in New's 2021 declaration, she represented, inter alia, that she has no reason to doubt Turner's account of the robbery and shooting. New additionally represented that she has "a lot of doubt" whether she was shot by Fields. See Docket Entry 69-1 [Exhibit 27] at CM/ECF 3.

New's 2021 declaration is problematic in several respects. New signed the declaration more than four years after Fields' trial—a trial during which New testified that she was shot by Fields—and more than three years after New signed her 2018 affidavit. The declaration is different in tone and quality from the affidavit, as the declaration provides much greater detail about the robbery and shooting and the investigation into the incident. Moreover, in the declaration, New did not unequivocally disavow her trial testimony or otherwise withdraw or renounce her testimony. Like she did in her affidavit, she couched the most important parts of her declaration in terms of possibilities.

Second, New exchanged Facebook messages with Fields' sister after Fields' trial. See Docket Entry 59-5 [Exhibit 3]. In the messages, New stated, inter alia, that she provided Turner's address to law enforcement officers, and New wished the police had conducted a more thorough investigation into the robbery and shooting. See Docket Entry 59-5 [Exhibit 3] at CM/ECF 5.

New's Facebook messages do not bolster or otherwise strengthen her 2018 affidavit or 2021 declaration, and the messages shed little light on Fields' innocence. The messages primarily confirm that New had doubt about her testimony after the conclusion of Fields' trial.

Third, Pepper testified at the trial that he could not identify Fields as one of the assailants. More than four years later, Pepper signed a declaration in which, inter alia, he represented that he now believes Fields was not involved in the robbery and shooting. See Docket Entry 69-2 [Exhibit 28].

Pepper's declaration is of limited significance as he was never able to identify any of the assailants, in part, because it was dark; he simply recognized a person he knew to be "Dee" or "D." The fact that Pepper now believes Fields was not involved in the robbery and shooting does not change the fact that Pepper could never identify any of the assailants.

Fourth, the scientific evidence relevant to eyewitness identifications consists of a report prepared by Dr. Nancy Franklin, Ph.D., ["Franklin"]. See Docket Entry 60-1 [Exhibit 4, Part 1], Docket Entry 61-1 [Exhibit 4, Part 2], Docket Entry 62-1 [Exhibit 4, Part 3], Docket Entry 63-1 [Exhibit 4, Part 4]. In the report, Franklin represented, in part, that New's identification of Fields has a high risk of being wrong.

The scientific evidence is problematic because it sheds little light on Fields' actual innocence. At most, Franklin's report indicates that New's identification of Fields could be wrong.

Fifth, several declarations were signed by people who knew New and Fields at, or about, the time of the robbery and shooting. For instance, Alicia Rodgers signed a declaration in which, inter alia, she represented that New was using drugs in June of 2015, New was doing a drug deal on the night of the incident, and New likely convinced herself that she had been shot by Fields after staring at his photograph on the internet. See Docket Entry 69-3 [Exhibit 29]. In other declarations, the declarants questioned New's mental state at the time of the incident or otherwise explained why they believe Fields is innocent. See Docket Entry 68-3 [Exhibit 24], 68-5 [Exhibit 26]; 69-4 [Exhibit 30], 69-5 [Exhibit 31], 69-6 [Exhibit 32], 69-7 [Exhibit 33], 69-9 [Exhibit 35].

The declarations are problematic because the declarants merely attack New's credibility or otherwise seek to impeach her testimony. "Latter-day evidence brought forward to impeach a prosecution witness will seldom, if ever," make a "clear and convincing showing" that no reasonable juror would have believed New's account. See Sawyer v. Whitley, 505 U.S. 333, 349 (1992). Additionally, the declarations are problematic because the declarants have no first-hand knowledge of Fields' innocence.

Last, a law enforcement expert, James Trainum ["Trainum"], prepared a report following Fields' trial in which Trainum addressed the police investigation into the robbery and shooting. See Exhibit 69-8 [Exhibit 34]. In Trainum's opinion, the investigation was seriously flawed.

Trainum's report is problematic because it sheds little light on Fields' innocence. The report only indicates that the police investigation into the robbery and shooting was less than exemplary.

The evidence of Fields' guilt is certainly not overwhelming, and the undersigned offers no opinion as to his guilt. The undersigned simply finds that the evidence he presents in support of his first claim at bar does not enable him to cross the extraordinarily high Herrera threshold, assuming such a threshold exists.

26

V. FIELDS' SECOND CLAIM AT BAR. Fields' second claim at bar is that his right to due process was violated when the prosecution suppressed Turner's identity. See Docket Entry 75 at CM/ECF 37-43. In support of the claim, Fields maintains that the prosecution knew "Dee" or "D" and Turner are the same person prior to Fields' trial but did not disclose the fact. Fields maintains that he only learned of Turner's identity when Sergeant Harwell testified at the trial. It is Fields' contention that the prosecution's suppression of Turner's identity violated Fields' right to due process as recognized in Brady v. Maryland, 373 U.S. 83 (1963).[4]

Fields asserted this Brady claim in his petition for writ of error coram nobis. The trial court denied the petition, finding, in part, that the identity of "Dee" or "D" was "not fully developed at the time of the trial" and, alternatively, the name "Dee" or "D" and his possible address were "disclosed in a timely fashion in discovery [...]" See Docket Entry 66-4 [Exhibit 10] at CM/ECF 2.

---

[4]      In Brady, the United States Supreme Court held that the prosecution's suppression of evidence favorable to an accused upon request violates his right to due process where the evidence is material either to his guilt or punishment, irrespective of the good faith or bad faith of the prosecution.

Fields appealed the denial of his petition for writ of error coram nobis and again raised his Brady claim. The state Court of Appeals summarized the facts relevant to the claim as follows:

> New testified at trial that one of the three men involved in the crimes was a man who lived nearby and whom she knew only by the nickname "Dee." She had given him a ride once "down the road to his grandmother's house." Detective Sergeant Scott Harwell of the El Dorado Police Department testified at trial that both New and Blake Pepper told police that one of the black males who participated in the crime was named "Dee." Harwell attempted to locate and apprehend the man known as "Dee" and eventually was able to make contact with a woman who lived at the address that had been identified as his grandmother's, though she told officers that her grandson did not live there. Harwell testified that at the time of trial, there was still a pending investigation regarding the other two assailants. Harwell also testified that New had seen a photo of Markeitheon "Dee" Turner–-who recently had been arrested on a theft-of-property warrant–-on the Union County Sheriff's Office website and that New had contacted him to identify Turner as the "Dee" who took part in the crime. Harwell testified that Turner had declined to make a statement and that he had not yet been charged as a participant in the crimes with appellant.
>
> After Fields's convictions, Turner was charged with crimes related to those for which Fields was convicted, though Turner was charged as an accomplice and not as the shooter. On November 9, 2017, he pleaded guilty to first-degree battery and an amended charge of robbery. During the plea hearing, he claimed to have no memory of the events because he was high on drugs at the time. He never contested assertions made during the plea hearing that Fields was the shooter in the crimes.

Fields's original petition for writ of error coram nobis contained as an attachment an unnotarized purported affidavit from Turner dated November 22, 2017, in which Turner claimed that he had never met Fields, that Fields was not involved in the crimes, and that the shooter was Derek Brown. Turner testified to the same effect at the coram nobis hearing. When asked to explain why, at his plea hearing, Turner claimed no memory of the crimes and did not contradict the statements that Fields was the shooter in the crimes, he said he did not know and gave other contradictory answers. Turner also gave his address as 2014 Lakeland, the same address New had provided for Turner's grandmother's house.

Fields's defense counsel, Daren Nelson, testified at the coram nobis hearing that he did not hear Turner's name until Fields's trial. However, Nelson also testified that he had been provided with the nickname "Dee" "from the beginning" and that, before trial, he had a court reporter prepare a transcript of an interview between Sergeant Harwell and New dated August 24, 2016, that contained the 2014 Lakeland address. He testified that he did not go to that address to try to locate "Dee" before trial. He also admitted that before Fields's trial, he received notes prepared by Harwell via discovery that also contained the 2014 Lakeland address. He admitted that he did not object when Turner's name was first provided during Harwell's testimony at Fields's trial.

At the coram nobis hearing, Harwell testified that while New had identified Turner as "Dee" to him from an internet mug shot sometime after April 29, 2017, which was before Fields's trial, she was not shown a known photo of Turner by police until July 27, 2017, after the trial. His notes did not reflect Turner's full name until that date. He testified that Turner had refused to be interviewed by police. Harwell again testified that police tried several times to make contact with Turner at 2014 Lakeland, the address New had given for him, and when he did speak with Turner's grandmother there, she told him that Turner did not live there anymore.

See Fields v. State, 574 S.W.3d at 209-210. The state Court of Appeals found that error coram nobis relief was not warranted and affirmed the denial of Fields' petition.

Payne maintains that Fields' second claim at bar warrants no relief. Payne so maintains, in part, because the claim was reasonably adjudicated by the state courts, and deference should be accorded the adjudications.

Fields disagrees. He maintains that his second claim at bar should be considered de novo because the state courts never issued a reasoned decision on the claim. It is Fields' contention that the courts "conflated the Brady issue with the error coram nobis question whether there was a third-party confession." See Docket Entry 85 at CM/ECF 26. Alternatively, Fields maintains that the courts' decisions on his claim should not be given deference because the decisions are contrary to Brady.

28 U.S.C. 2254(d) mandates the granting of deference to the adjudication of a claim made by the state courts and applies to an adjudication made by either a trial or state appellate court. See McCoy v. Norris, No. 5:06-cv-00261-JFF, 2007 WL 865409 (E.D. Ark. Feb. 13, 2007). 28 U.S.C. 2254(d) provides that if a claim is adjudicated on the merits in state court, a federal court cannot grant relief unless the state court (1) contradicts   or   unreasonably   applies   United   States   Supreme   Court

30

precedent, or (2) makes an adjudication based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. <u>See</u> <u>Shoop v. Twyford</u>, --- U.S. ---, 142 S.Ct. 2037, 213 L.Ed.2d 318 (2022) (internal quotation marks omitted).[5] The question is not whether the state court's determination is incorrect. <u>See</u> <u>Id</u>. The question is whether the state court's determination is unreasonable, a substantially higher threshold than whether the determination is incorrect. <u>See</u> <u>Id</u>.

Fields raised his second claim at bar in a petition for writ of error coram nobis. The state Court of Appeals noted the claim, cited <u>Brady</u>, and outlined the facts relevant to the claim. The state Court of Appeals affirmed the trial court's rejection of the claim but did so in what amounts to a summary ruling. The state Court of Appeals did not address the reasons relied upon by the trial court and did not offer its own reasons for rejecting the claim. The state Court of Appeals simply concluded that error coram nobis relief was not warranted.

---

[5]     A state court adjudication contradicts United States Supreme Court precedent if the state court applied a rule different from the governing law as set forth in Supreme Court precedent or the state court decided a case differently than the Supreme Court has on a set of materially indistinguishable facts. <u>See</u> <u>White v. Kelley</u>, 824 F.3d 753 (8th Cir. 2016). A state court adjudication unreasonably applied Supreme Court precedent if the state court correctly identified the governing law but unreasonably applied the law to the facts of the case. <u>See</u> <u>Id</u>. An adjudication based on unreasonable determination of the facts occurred only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings are not supported by the record. <u>See</u> <u>White v. Dingle</u>, 757 F.3d 750 (8th Cir. 2014).

The state Court of Appeals is presumed to have adjudicated Fields' second claim at bar on the merits.[6] The court's summary ruling on the claim did not result in a decision that contradicts <u>Brady</u>. Additionally, the court's summary ruling did not involve an unreasonable application of <u>Brady</u> as Fields has failed to show that there is no "reasonable basis" for the court's decision. <u>See</u> <u>Gould v. Payne</u>, No. 4:20-cv-01084-BRW-JTK, 2021 WL 4812851, 4 (E.D. Ark. Sept. 7, 2021), report and recommendation adopted, No. 4:20-cv-01084-BRW, 2021 WL 4812526 (E.D. Ark. Oct. 14, 2021).[7] Moreover, the court did not make an adjudication of the claim based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

---

[6]   A state court is presumed to have adjudicated a claim on the merits if the petitioner presented the claim to the state court and the court denied relief. <u>See</u> <u>Dansby v. Payne</u>, 47 F.4th 647, 655 (8th Cir. 2022). "This presumption applies even when the state court's opinion does not expressly address the claim." <u>See</u> <u>Id</u>. (citing <u>Johnson v. Williams</u>, 568 U.S. 289, 300-301 (2013)). Here, Fields has not rebutted the "presumption of adjudication," <u>see</u> <u>Dansby v. Payne</u>, 47 F.4th at 655; nothing in the state Court of Appeals' decision suggests that the court disposed of the claim on a procedural ground; and it is unlikely that the court simply overlooked the claim.

[7]   "When, however, a state court issues a summary ruling, the petitioner can only satisfy the 'unreasonable application' prong of habeas review by showing there is no reasonable basis for the state court decision, which the habeas court assesses by determining what arguments or theories could have supported the state court decision and whether fair-minded jurists could disagree that those arguments or theories are inconsistent with a prior decision of the United States Supreme Court. <u>Cullen v. Pinholster</u>, 563 U.S. at 187 (quoting <u>Harrington v. Richter</u>, 562 U.S. at 98, 101)." <u>See</u> <u>Gould v. Payne</u>, 2021 WL 4812851, 4.

Brady, in short, requires the petitioner to show that the evidence in question is favorable and material. With regard to the materiality requirement, Fields provides the following summary, a summary the undersigned adopts:

> [...] Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Bagley, 473 U.S. at 682; [...] A "reasonable probability is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682. "In other words, favorable evidence is subject to constitutionally mandated disclosure when it 'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" Cone v. Bell, 556 U.S. 449, 470 (2009) (citing Kyles v. Whitley, 514 U.S. 419 (1995)).

See Docket Entry 75 at CM/ECF 39.

The circumstances surrounding the identification of "Dee" or "D" as Turner, and the disclosure of his identity, were quite involved. As the state Court of Appeals could and did find, the only information law enforcement officers initially had about any of the three assailants was the name, or nickname, "Dee" or "D" and his possible address, i.e., 2014 Lakeland. Attorney Nelson was provided with the name, or nickname, "Dee" or "D" "from the beginning," see Fields v. State, 574 S.W.3d at 210, and learned of a possible address for "Dee" or "D" from discovery requests.

Fields offers evidence in support of the proposition that law enforcement officers knew much more about "Dee" or "D" than the officers ever acknowledged. The problem, though, is that Fields did not fully and fairly present the evidence to the state courts.

When a petitioner seeks to expand the record by offering evidence beyond the existing state court record, he must satisfy the requirements set forth in 28 U.S.C. 2254(e)(2). See Rucker v. Norris, No. 5:07-cv-00051-JWC, 2008 WL 687374 (E.D. Ark. Mar. 11, 2008). See also Shinn v. Ramirez, --- U.S. ---, 142 S.Ct. 1718, 212 L.Ed.2d 713 (2022). He must show that his claim relies on a new rule of constitutional law made retroactive to cases on collateral review, or that "'due diligence could not have previously discovered the facts.'" See Mark v. Ault, 498 F.3d 775, 788 (8th Cir. 2007) (quoting Cox v. Burger, 398 F.3d 1025, 1030 (8th Cir. 2005)).

Because Fields' second claim at bar does not rely on a new rule of constitutional law, he must show that due diligence could not have previously discovered the evidence. He has failed to make that showing, and an expansion of the record to include the additional evidence is not warranted. The evidence was not hidden from him, and he was not prevented from discovering it. Instead, he could have discovered the evidence years ago.

At some point prior to Fields' trial, and it is not clear when, law enforcement officers learned that "Dee" or "D" and Turner are the same person.[8] The officers attempted to interview Turner, but he refused to talk with them. Although New was not shown a known photograph of Turner until after Fields' trial, and Sergeant Harwell's notes do not reflect Turner's full name until after the trial, Sergeant Harwell testified at the trial that "Dee" or "D" had come to be identified as Turner. The information was not provided to Attorney Nelson prior to the trial, and it was only during the trial that he first heard Turner's name.

Prior to Fields' trial, no one knew what Turner's statement might be about the robbery and shooting. Law enforcement officers did not know, the prosecution did not know, and Fields certainly did not know. It was not until Turner's plea/sentencing hearing four months after Fields' trial that Turner made what appears to have been his first statement about the incident. Turner admitted in open court that he could remember nothing

---

[8] It may have been when Sergeant Harwell spoke with a woman at 2014 Lakeland, although it is not clear when the conversation occurred. The woman identified herself as the grandmother of "Dee" or "D" and reported that her grandson did not reside at the address. It seems likely that the true identity of "Dee" or "D" would have been uncovered during the conversation. Law enforcement officers, for certain, learned that "Dee" or "D" and Turner are the same person when New contacted Sergeant Harwell sometime after April 29, 2017. New reported that she had seen a mug shot of Turner on a website maintained by the Union County Sheriff's Office and determined that he was the "Dee" or "D" who participated in the robbery and shooting.

about the incident because he was "under the influence of drugs." <u>See</u> Docket Entry 67-2 [Exhibit 17] at CM/ECF 6. The trial court, and later the state Court of Appeals, could and did accept his solemn declaration as true. The courts could and did also find that he was completely without credibility when, a mere thirteen days later, he supposedly could remember the most important details about the incident.

In light of the fact that Turner knew nothing about the robbery and shooting, notwithstanding his subsequent, discredited affidavit to the contrary, the undersigned is hard pressed to envision how his testimony is favorable and material. Clearly, Turner's identity would have been helpful to know. Even had it been disclosed, though, the undersigned is not convinced that the result of the trial would have been different.

As a part of Fields' second claim at bar, he additionally maintains that the prosecution failed to disclose "information relating to numerous statements made by New to law enforcement." <u>See</u> Docket Entry 75 at 38. Specifically, Fields maintains that the prosecution failed to disclose New's statements about the involvement of "Dee" or "D" in the robbery and shooting and additionally failed to disclose New's statements about the doubt she harbored surrounding her identification of Fields as one of the assailants.

36

There are at least three problems with Fields' assertion. First, the state courts could and did find that the prosecution disclosed the information it initially obtained from New about "Dee" or "D" and his possible address, and deference is accorded the courts' findings. Attorney Nelson was timely provided with that information.

Second, it is true that law enforcement officers did not timely disclose that "Dee" or "D" and Turner are the same person. Nevertheless, given the state Court of Appeals' presumptively correct findings of fact, his testimony is neither favorable nor material.

Third, New's statements about the doubt she harbored surrounding her identification of Fields as one of the assailants were primarily made after Fields' trial. For instance, much of New's 2018 affidavit relies heavily upon Turner's affidavit, but Turner did not sign his affidavit until November 22, 2017, or approximately four months after Fields' trial.

VI. <u>FIELDS' THIRD CLAIM AT BAR</u>. Fields' third claim at bar is that his right to due process was violated when Sergeant Harwell testified falsely at Fields' trial. <u>See</u> Docket Entry 75 at CM/ECF 43-54. Fields specifically maintains that Sergeant Harwell testified falsely in the following two respects: first, when Sergeant Harwell testified that the only information law enforcement officers had about Turner's identity was the name, or

nickname, "Dee" or "D;" and second, when Sergeant Harwell testified that "during New's initial interview, she recognized the shooter as someone she had gone to school with," <u>see</u> Docket Entry 75 at CM/ECF 51. It is Fields' contention Sergeant Harwell's false testimony violated Fields' right to due process as recognized in <u>Napue v. Illinois</u>, 360 U.S. 264 (1959), and <u>Giglio v. United States</u>, 405 U.S. 150 (1972).[9]

Payne maintains that Fields' third claim at bar cannot be considered as it is procedurally barred from federal court review. Payne so maintains because Fields did not present the claim to the state courts and cannot show the requisite cause and prejudice or, alternatively, that he is actually innocent.

Fields maintains, in response, that the claim can indeed be considered because it was "properly preserved." <u>See</u> Docket Entry 75 at CM/ECF 53. Alternatively, he maintains that the claim can be considered because he can show cause and prejudice or, alternatively, that he is actually innocent.

---

[9]     <u>Napue</u> and <u>Giglio</u> stand for the proposition that the prosecution may not "use or solicit false evidence or allow it to go uncorrected." <u>See</u> <u>United States v. Martin</u>, 59 F.3d 767, 770 (8th Cir. 1995). To prove prosecutorial use of false testimony, the petitioner must show that: "(1) the prosecution used perjured testimony; (2) the prosecution knew or should have known of the perjury; and (3) there is a 'reasonable likelihood' that the perjured testimony could have affected the jury's judgment." <u>See</u> <u>Id</u>. (quoting <u>United States v. Nelson</u>, 970 F.2d 439, 443 (8th Cir.1992)).

A federal court cannot consider a claim if the petitioner failed to first present it to the state courts in accordance with the state's procedural rules. See Shinn v. Ramirez, 142 S.Ct. 1718. A claim not so presented may nevertheless be considered in one of two instances. First, it can be considered if the petitioner can show cause for his procedural default and prejudice. See Burford v. Payne, No. 4:20-cv-00398-KGB-JJV, 2020 WL 8299805 (E.D. Ark. July 15, 2020), report and recommendation adopted, No. 4:20-cv-00398-KGB, 2021 WL 280880 (E.D. Ark. Jan. 27, 2021).[10] Second, the claim can be considered if the petitioner can show that the failure to consider the claim will result in a fundamental miscarriage of justice, that is, a constitutional violation has resulted in the conviction of one who is actually innocent. See Id.

The undersigned cannot agree that Fields properly preserved his third claim at bar. He simply did not present the claim to the state courts. A procedural default has therefore occurred with respect to the claim. The question is whether he can show cause and prejudice for the default, or that he is actually innocent.

---

[10]    To establish cause, the petitioner must show that an objective factor external to the defense impeded his attorney's efforts to comply with the state's procedural rules. See Shinn v. Ramirez, supra. To establish prejudice, the petitioner must show that the constitutional violation worked to his actual and substantial disadvantage. See Id.

As cause for the procedural default, Fields maintains that interference by state officials made compliance with the state's procedural rules impracticable. He additionally maintains that the factual and legal bases for his third claim at bar were not available at the time of the state court proceedings.

The undersigned is not persuaded by either contention. The facts underlying Fields' third claim at bar were not hidden from him, and he was not prevented from discovering them. In fact, as the state Court of Appeals could and did find, Attorney Nelson obtained a transcript of Sergeant Harwell's August of 2016 interview with New, an interview in which they appear to have discussed aspects of the robbery and shooting. Fields knew, or should have known, of the essence of his claim, at the latest, by the time of his trial.

Fields alternatively maintains that his third claim at bar should be considered because the failure to do so will result in a fundamental miscarriage of justice, that is, a constitutional violation has resulted in the conviction of one who is actually innocent. In support of his assertion, he relies upon the evidence he offers in connection with his first claim at bar, evidence that includes Turner's affidavit, New's 2018 affidavit, and other, new evidence.

The "gateway" threshold allowing for the consideration of an otherwise procedurally defaulted claim upon a showing of actual innocence is lower than the threshold for a freestanding claim of actual innocence. See House v. Bell, 547 U.S. 518. A petitioner must produce new, reliable evidence that was not presented at trial, evidence that establishes "'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt, [...]'" See Docket Entry 75 at CM/ECF 14-15 (quoting Schlup v. Delo, 513 U.S. at 324). See also Boyd v. Payne, No. 5:19-cv-00223-KGB-JTK, 2019 WL 10754332, (E.D. Ark. Oct. 7, 2019), report and recommendation adopted sub nom. Boyd v. Kelley, No. 5:19-cv-00223-KGB, 2020 WL 5823535 (E.D. Ark. Sept. 30, 2020).

Fields maintains that he has made the requisite showing. Specifically, he maintains the following:

> [...] Here, the confession and repudiation of Fields' involvement by [...] Turner alone meets that standard. When coupled with the new scientific and recantation evidence undermining New's identification, which was the only evidence presented against Fields at trial, there is nothing left to convict Fields. [...] When faced with Turner's confession, New's doubts, and the science undermining New's initial and in-court identifications, a reasonable jury undoubtedly would have found Fields not guilty.

See Docket Entry 75 at CM/ECF 15-16.

The undersigned has considered the new evidence, as well as the old evidence. Having done so, the undersigned is not convinced that Fields can cross the House threshold.

The undersigned will not reproduce the new evidence offered by Fields or summarize the evidence offered at his trial. It is enough to note that his assertion of actual innocence hinges upon Turner's affidavit and New's 2018 affidavit. The other, new evidence serves primarily to support the affidavits and/or attack New's credibility. The problem, though, is that Turner's affidavit and New's 2018 affidavit could, and can, be reasonably discounted. It was not unreasonable for the trial court to conclude that Turner was "completely without credibility," see Docket Entry 66-4 [Exhibit 10] at CM/ECF 2, or for the state Court of Appeals to similarly reject his affidavit, see Fields v. State, 574 S.W.3d at 211. With respect to New's 2018 affidavit, like the trial court, the undersigned is not persuaded that she recanted her trial testimony.

Again, the undersigned offers no opinion as to Fields' guilt. The undersigned simply finds that the evidence he presents in connection with his third claim at bar does not enable him to cross the House threshold. The claim will not be considered as it is procedurally barred from federal court review.

a

Payne maintains that Fields' fourth claim at bar cannot be considered as it is procedurally barred from federal court review. Payne so maintains because Fields did not present the claim to the state courts and cannot show cause and prejudice or, alternatively, that he is actually innocent.[11]

Fields agrees that his fourth claim at bar "was not presented to the Arkansas courts below." See Docket Entry 75 at CM/ECF 62. He nevertheless maintains that claim can be considered because he can show cause and prejudice or, alternatively, that he is actually innocent.

Given Fields' admission, a procedural default has occurred with respect to his fourth claim at bar. The question is whether he can show cause and prejudice for his procedural default.

---

[11]    Payne additionally maintains that Fields' fourth claim at bar is not exhausted, noting that "it could still be presented in an error coram nobis action in state court." See Docket Entry 78 at CM/ECF 19. When a petition for writ of error coram nobis is sought after a judgment has been affirmed on appeal, the trial court can only entertain the petition with the permission of a state appellate court. See Newman v. State, 2009 Ark. 539, 354 S.W.3d 61 (2009). Although there is no specific time limit for filing such a petition, "due diligence is required in making an application for relief." See Id., 354 S.W.3d at 65. "Due diligence requires that (1) the defendant be unaware of the fact at the time of the trial; (2) the defendant could not have, in the exercise of due diligence, presented the fact at trial; and (3) the defendant, after discovering the fact, did not delay bringing the petition." See Id. See also Dansby v. Payne, 47 F.4th 647, 658 (8th Cir. 2022) (writ of error coram nobis unavailable in Arkansas if petitioner failed to exercise due diligence in petitioning for relief). Here, it is unlikely that Fields can satisfy the third requirement. It is not clear when he learned that New was working as a confidential information. It is also at least worth noting that the state Court of Appeals denied Fields' second state appellate court motion to stay briefing in his direct appeal and reinvest jurisdiction in the trial court to consider additional evidence in connection with his petition for writ of error coram nobis. It would likely be futile to require him to return to state court to present his fourth claim at bar.

As cause for the procedural default, Fields maintains that interference by state officials made compliance with the state's procedural rules impracticable. It is Fields' contention that state officials hid, or otherwise failed to disclose, New's work as a confidential informant for local law enforcement agencies, thereby preventing Fields from raising his fourth claim at bar until now.

The undersigned takes no position on Fields' assertion of cause for his procedural default. He may be correct that "[t]he requirements for showing cause and prejudice align with the requirements for proving a Brady violation," see Docket Entry 75 at CM/ECF 62, and considering his assertion of cause is tantamount to considering his fourth claim at bar on the merits. Regardless, the claim has no merit because Fields cannot show that evidence of New's work as a confidential informant is favorable and material.

The undersigned accepts that New was working as a confidential informant for the El Dorado Police Department and the Thirteenth Judicial District Drug Task Force at the time of the robbery and shooting. Her work as a confidential information, without more, establishes very little. There is no evidence that New was specifically targeted by her assailants as a result of her work as a confidential informant or that the incident

otherwise occurred as a result of her work as a confidential informant. There is also no evidence that New was working as a confidential informant in a case involving Fields, Turner, Brown, or the unidentified assailant, or that one of them may have been motivated to commit the robbery and shooting as a result of New's work as a confidential informant in a case involving one of them.

   VIII. <u>FIELDS' FIFTH CLAIM AT BAR</u>. Fields' fifth claim at bar is that he failed to receive effective assistance from Attorney Nelson at trial and from Attorneys Kaiser and James during the error coram nobis proceeding. <u>See</u> Docket Entry 75 at CM/ECF 63-94. The claim is comprised of thirteen sub-claims.

   Payne maintains, in part, that Fields' fifth claim at bar cannot be considered because it is procedurally barred from federal court review. Payne so maintains because the claim was not raised in a properly filed Rule 37 petition and thereafter raised on appeal to the state Court of Appeals. Payne additionally maintains that Fields cannot show cause and prejudice or, alternatively, that he is actually innocent.[12]

---

[12]    Alternatively, Payne maintains that even if Fields' Rule 37 petition had been properly filed, several sub-parts of his fifth claim at bar cannot be considered because "they were never presented in state court and the courts to which Fields would be required to present his [sub-claims] in order to meet the exhaustion requirement would now find them procedurally barred." <u>See</u> Docket Entry 78 at CM/ECF 18.

Fields understandably disagrees with Payne. Fields maintains that his

fifth claim at bar can indeed be considered and offers the following reasons

why:

> [... Payne] asserts that the claims raised in Fields' R. 37
> petition—which includes all his ineffective assistance of counsel
> claims, because in Arkansas such claims cannot be raised on
> direct appeal—are procedurally defaulted because "they were
> not litigated in a properly filed Rule 37 petition," relying on the
> state court's denial of the petition as overlength. [...] But, in
> the same breath, [Payne] repeatedly relies on the state court's
> alternate ruling on the merits denying Fields' R. 37 petition to
> assert that AEDPA binds this Court to the state court opinions,
> and may not review those claims de novo, or receive any new
> evidence proving those claims.
>
> This is untenable; [Payne] cannot have his cake and eat it
> too. Either the state court's alternate ruling on the merits of
> the R. 37 petition exhausted the claims. Or, the claims are
> procedurally defaulted because the R. 37 was denied as
> improperly filed, and thus there is no reasoned state court
> opinion to which this Court owes deference, enabling this Court
> to review it de novo via Martinez and/or Schlup. Regardless,
> the outcome is the same. This Court must review the
> constitutional claims de novo and, when it does, it will
> conclude that Fields is entitled to habeas relief.

See Docket Entry 85 at CM/ECF 7-8.[13]

---

[13]     Fields offers Martinez v. Ryan, 566 U.S. 1 (2012), in support of his assertion of
cause and prejudice for the alleged procedural default of his fifth claim at bar. In
Martinez, the United States Supreme Court held that ineffective assistance of post-
conviction counsel may excuse the default of a substantial claim of ineffective
assistance of trial counsel. Schlup, as previously noted, is a "gateway" that allows for
the consideration of an otherwise defaulted claim upon a showing of actual innocence.

Fields' presentation to the state courts of his fifth claim at bar was disjointed. This much is clear, though: in Fields' Rule 37 petition, he raised some, but not all, of the thirteen sub-claims he now raises in the petition at bar. The trial court denied the Rule 37 petition because it exceeded ten pages, the maximum number of pages allowed by state law. See Docket Entry 67-1 [Exhibit 16]. The court alternatively reached the merits of the petition and found that the sub-claims alleged in the petition warranted no relief. In the same decision, the court denied his motion for leave to file an amended, overlength petition for post-conviction relief. The court found, in part, that Fields failed to set forth a legitimate justification for filing an enlarged petition or obtaining leave to amend.

The state Court of Appeals affirmed the denial of Fields' Rule 37 petition and, as a part of doing so, affirmed the denial of his motion for leave to file an amended, overlength petition for post-conviction relief. See Field v. State, 599 S.W.3d 351. The appellate court did not address the sub-claims alleged in the petition but instead affirmed the denial of the petition solely on the procedural ground relied upon by the trial court, i.e., the petition exceeded ten pages and Fields failed to obtain permission to file a petition in excess of ten pages. Specifically, the state Court of Appeals found the following:

The Arkansas Supreme Court has held that the rule limiting petitions to ten pages is an entirely reasonable restriction on petitioners seeking postconviction relief. E.g., Adams v. State, 2013 Ark. 174, 427 S.W.3d 63; see Davis v. State, 2010 Ark. 366, 2010 WL 3794178 (per curiam) (citing Sanders v. State, 352 Ark. 16, 98 S.W.3d 35 (2003)); Washington v. State, 308 Ark. 322, 823 S.W.2d 900 (1992); Maulding v. State, 299 Ark. 570, 776 S.W.2d 339 (1989). Moreover, the high court has stated that due process does not require courts to provide an unlimited opportunity to present postconviction claims or prevent a court from establishing limits on the number of pages in a petition. [...] The supreme court has also held that any exhibits attached to a petition filed under Rule 37 are counted for purposes of determining whether the petition conforms to the ten-page limitation. [...] Here, Fields's petition was twenty-two pages.

A petitioner under Rule 37.1 may demonstrate that he cannot adequately present his claims to the court in only ten pages and may request to file a petition longer than ten pages, but the overlength petition may be filed only with the permission of the circuit court. [...] If a petitioner does not receive permission to file an overlength petition, the petitioner is obliged to proceed in accordance with our rules. [...] If the petitioner chooses not to do so, the petitioner must bear the consequences of his decision to submit an overlength amended petition. [...]

In the present case, our court's mandate in Fields's direct appeal issued on April 2, 2019, and on June 3, Fields's counsel filed a twenty-two-page petition for postconviction relief. Counsel then waited over a month—until July 15—to file a motion for permission to file an overlength petition, in which he noted that the motion was filed because the State challenged the length of the petition. Fields chose to file a twenty-two-page petition; accordingly, he must "bear the consequences" of that decision. [...]

See Fields v. State, 599 S.W.3d at 352–353.

A federal court is precluded from considering a claim that the state courts disposed of on an independent and adequate non-federal ground. See Adams v. Hobbs, No. 5:14-cv-00067-KGB, 2014 WL 5306782 (E.D. Ark. Oct. 15, 2014). With respect to that rule, United States District Judge Kristine G. Baker observed the following:

> [...] "This rule applies whether the state law ground is substantive or procedural." Coleman v. Thompson, 501 U.S. 722, 729 (1991). Where the state court dismisses a habeas petitioner's claims on independent and adequate state law grounds or the petitioner has failed to fairly present his claims to the state court, the claims are procedurally defaulted, and a federal district court cannot consider them unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged constitutional violation or actual innocence. Coleman, 501 U.S. at 750-51; Prewitt v. Goeke, 978 F.2d 1073, 1077 (8th Cir.1992); Reagan, 279 F.3d at 656. "In other words, a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or actual innocence standards." Clemons, 381 F.3d at 750.

See Id. at 6. If the state courts relied upon a procedural rule in disposing of a claim, the rule must have been "firmly established, regularly followed and readily ascertainable" when it was applied to the petitioner. See McCollough v. Norris, No. 5:07-cv-00015-BSM, 2008 WL 3271555, 4 (E.D. Ark. Aug. 7, 2008).

The state Court of Appeals disposed of Fields' Rule 37 petition, and his claim of ineffective assistance of counsel, on a procedural ground, i.e., the petition exceeded ten pages. The page limit rule is firmly established, is regularly followed, and was readily ascertainable when it was applied to him. See Fields v. State, 599 S.W.3d 351 (collecting cases in which page limit rule applied). See also Adams v. Hobbs, 2014 WL 5306782 (procedural default occurred when claim was not raised in accordance with State's procedural rules pertaining to, inter alia, page limit for Rule 37 petition). Admittedly, there are instances in which a trial court has entertained a petition in excess of ten pages, but it is undoubtedly within the court's discretion to do so.

Moreover, save some unusual circumstance, a federal court should not consider whether a state court properly applied its default rule to a claim, as a federal court does not sit to correct a state court's application of its ordinary adequate procedural rules. See Clemons v. Luebbers, 381 F.3d 744 (8th Cir. 2004). This case does not present an unusual circumstance.[14]

---

[14]    An unusual circumstance arose when a filing requirement was imposed that was not required by Rule 37. See May v. Payne, No. 5:18-cv-00053-BSM-JTR, 2020 WL 1847644 (E.D. Ark. Mar. 13, 2020), report and recommendation adopted, 5:18-cv-00053-BSM, 2020 WL 1845233 (E.D. Ark. Apr. 10, 2020) (state circuit court clerk imposed "cover sheet" filing requirement not required by Rule 37 and refused to file petition).

Given the foregoing, the undersigned finds that a procedural default has occurred with respect to Fields' fifth claim at bar. The question is whether he can show cause and prejudice for the default, or that he is actually innocent.

With respect to cause, Fields relies heavily upon Martinez v. Ryan, 566 U.S. 1 (2012), a case in which the United States Supreme Court held that ineffective assistance of post-conviction counsel can excuse the procedural default of a substantial claim of ineffective assistance of trial counsel. It is Fields' contention that the default is excused or otherwise overcome because his post-conviction counsel failed to provide effective assistance.

Payne disagrees. He maintains that "'[w]hile the Martinez exception is potentially applicable to claims of constitutional ineffective assistance of trial counsel, in Arkansas a petitioner must first initiate a Rule 37 proceeding.'" See Docket Entry 78 at CM/ECF 22 (citing Travis v. Kelley, 5:17-cv-00044-SWW-JTR, 2017 WL 4295258, 2 (E.D. Ark. Sept. 5, 2017), report and recommendation adopted 5:17-cv-00044-SWW, 2017 WL 4295197 (E.D. Ark. Sept. 27, 2017)). It is Payne's contention that Fields cannot benefit from Martinez because Fields did not properly file his Rule 37, thereby effectively failing to initiate a Rule 37 proceeding.

Payne is correct in that in order for Martinez to apply, a petitioner must first initiate a Rule 37 proceeding. Here, Fields initiated a Rule 37 proceeding. The petition filed by post-conviction counsel was defective, though, because it exceeded ten pages, and counsel failed to obtain permission to file a petition in excess of ten pages.

In Jackson v. Payne, No. 6:19-cv-06049-SOH, 2022 WL 370243 (W.D. Ark. Feb. 7, 2022), United States District Susan O. Hickey was presented with a similar situation. Jackson filed a Rule 37 petition in which he challenged, in part, his trial attorney's representation. The petition was denied because it was not properly verified. Jackson then filed a petition pursuant to 28 U.S.C. 2254. The procedural bar issue arose, and he sought the benefit of Martinez. Judge Hickey found that Jackson was entitled to the benefit of Martinez for the following reason:

> [...] Martinez plainly applies to those situations where an attorney's ineffective postconviction representation procedurally bars a petitioner from presenting an ineffective assistance of trial counsel claim on habeas review. Accordingly, the Court finds that the Martinez exception applies when a defective Rule 37 petition was filed and the defective motion causes a procedural default on an ineffective assistance of trial counsel claim.

See Id. at 3.

Given that Fields initiated a Rule 37 proceeding, but post-conviction counsel filed a defective petition in initiating the proceeding, <u>Jackson</u> counsels in favor of finding that Fields benefits from <u>Martinez</u> with respect to his fifth claim at bar. <u>Martinez</u> will excuse the procedural default of the claim, but not to the extent he wishes. For the reasons that follow, seven of the thirteen sub-claims that comprise the claim cannot be considered.

A. <u>Sub-claims 5[L] AND 5[M]</u>. Sub-claims 5[L] and 5[M] involve challenges to the representation provided by Attorneys Kaiser and James.[15] <u>Martinez</u> can only excuse the procedural default of a claim of ineffective assistance of trial counsel. <u>Martinez</u> cannot excuse the default of a claim of ineffective assistance of appellate counsel, <u>see</u> <u>Lane v. Kelley</u>, 5:16-cv-00355-DPM-JTR, 2017 WL 5473925 (E.D. Ark. Nov. 14, 2017), report and recommendation adopted, 5:16-cv-00355-DPM, 2017 WL 6542748 (E.D. Ark. Dec. 21, 2017), or as here, the default of a claim of ineffective assistance of error coram nobis counsel. Thus, <u>Martinez</u> cannot excuse the default of sub-claims 5[L] and 5[M], and they are barred from federal court review.[16]

---

[15]     In sub-claim 5[L], Fields maintains that Attorneys Kaiser and James failed to subpoena New, Field's sister, and Brown for the hearing on the petition for writ of error coram nobis. In sub-claim 5[M], Fields maintains that Attorneys Kaiser and James failed to investigate Turner's background and criminal history.

[16]     The actual innocence exception does not salvage sub-claims 5[L] and 5[M].

B. <u>Sub-claims 5[B], 5[C], 5[E], 5[G], AND 5[H]</u>. Sub-claims 5[B], 5[C], 5[E], 5[G], and 5[H] involve challenges to the representation provided by Attorney Nelson.[17] <u>Jackson</u> provides that <u>Martinez</u> only applies when post-conviction counsel files a defective Rule 37 petition and the defective petition "cause[d] a procedural default on an ineffective assistance of trial counsel claim." <u>See</u> <u>Jackson v. Payne</u>, 2022 WL 370243, 3. In this instance, the defective Rule 37 petition filed by post-conviction counsel did not cause a default of sub-claims 5[B], 5[C], 5[E], 5[G], and 5[H]. The undersigned so finds because the sub-claims were not raised in the defective Rule 37 petition, and the defective petition had nothing to do with the sub-claims not being raised. Instead, they were simply not raised. <u>Martinez</u> cannot excuse the default of sub-claims 5[B], 5[C], 5[E], 5[G], and 5[H], and they are barred from federal court review.[18]

---

[17] In sub-claim 5[B], Fields maintains that Attorney Nelson failed to consult with and call an expert in eyewitness identifications to educate the jury on the inherent unreliability of New's identification of Fields. In sub-claim 5[C], Fields maintains Attorney Nelson failed to seek a jury instruction that explained the scientific research regarding eyewitness identifications. In sub-claim 5[E], Fields maintains that Attorney Nelson failed to impeach Sergeant Harwell regarding his false testimony, his failure to adequately investigate and arrest Turner sooner, and the deficiencies in Sergeant Harwell's investigation of the robbery and shooting. In sub-claim 5[G], Fields maintains that Attorney Nelson failed to request a mistrial once Sergeant Harwell disclosed Turner's identity. In sub-claim 5[H], Fields maintains that Attorney Nelson failed to consult with and present a police practices expert or uncover New's status as a confidential informant.

[18] The actual innocence exception does not salvage sub-claims 5[B], 5[C], 5[E], 5[G], and 5[H].

C. <u>Sub-claims 5[A], 5[D], 5[F], 5[I], 5[J], and 5[K]</u>. The remaining sub-claims of Fields' fifth claim at bar, <u>i.e.</u>, sub-claims 5[A], 5[D], 5[F], 5[I], 5[J], and 5[K], involve challenges to Attorney Nelson's representation, and the defective Rule 37 petition filed by post-conviction counsel caused the procedural default of the sub-claims. In order for <u>Martinez</u> to apply to those sub-claims, he must show that they are "substantial," that is, the sub-claims must have "'some merit.'" <u>See</u> <u>Thomas v. Payne</u>, 960 F.3d 465, 474 (8th Cir. 2020) (quoting <u>Martinez</u>, 566 U.S. at 14)). The undersigned will bypass determining whether Fields can make that showing and will simply address the sub-claims to the extent they can be considered.

Sub-claims 5[A], 5[D], 5[F], 5[I], 5[J], and 5[K] are governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires a two-prong showing. First, Fields must show that Attorney Nelson's performance was deficient. "The performance prong requires the claimant to overcome a strong presumption that counsel's representation was within the wide range of reasonable professional assistance by showing that counsel's performance not just deviated from best practices but amounted to incompetence." <u>See</u> <u>Dorsey v. Vandergriff</u>, 30 F.4th 752, 757 (8th Cir. 2022) (internal quotation marks and citations omitted). Second, Fields must show that he was prejudiced by Attorney Nelson's performance. <u>See</u> <u>Id</u>.

Sub-claim 5[A]. Fields maintains in sub-claim 5[A] that Attorney Nelson was ineffective because he failed to file a motion to suppress challenging New's pre-trial identification of Fields. See Docket Entry 75 at CM/ECF 66-68. Specifically, Fields maintains that Attorney Nelson erred when he filed a motion in limine challenging New's pre-trial identification of Fields. Fields maintains that Attorney Nelson should have instead filed a motion to suppress.

The record reflects that Attorney Nelson filed a pre-trial motion in limine in which he challenged New's identification of Fields and asked that the photographic identification of Fields be excluded. Attorney Nelson supported the motion with the following representations:

> That it is anticipated that the State will attempt to bring in evidence of an identification of the defendant through a series of photos that were presented to the victim by law enforcement on or about August 24, 2016; over one year after the alleged incident.

> That the victim found and viewed an alleged photograph of the defendant on the Union County inmate list prior to making the identification of the defendant through the series of photographs presented by the El Dorado Police investigators.

> Further, the series of photos were only presented to the victim after she contacted El Dorado Police investigators about a possible identification of the defendant.

Said inmate list and the photo on said list are hearsay evidence and should be excluded from use by the State.

Additionally, said photographic identification of the defendant is tainted by: 1) the length of time between the incident and the identification, making said identification unreliable; and 2) the fact that a photo of the defendant was identified by the victim prior to her viewing and identifying the defendant in the series of photographs presented by law enforcement, making the identification unduly suggestive.

See Docket Entry 78-2 [Exhibit A1] at CM/ECF 44. The trial court denied

the motion during a pre-trial hearing, finding the following:

THE COURT: If there was some issue regarding the suppression of this manner of identification I think it would have been more properly brought in a Motion to Suppress, not a Motion in Limine. I have to agree with the State, I don't think it's hearsay. I think it does go to credibility and can either discredit or enhance the credibility of the proponent. I leave it to counsel's able ability to get to the bottom of it. [...]

See Docket Entry 78-2 [Exhibit A1] at CM/ECF 93.

The trial court subsequently revisited New's pre-trial identification

of Fields, doing so in connection with Fields' Rule 37 petition. The trial

court found that even had Attorney Nelson moved to suppress New's

identification of Fields, the motion would have been denied because the

identification was "sufficiently reliable." See Docket Entry 67-1 [Exhibit

16] at CM/ECF 11. Specifically, the trial court found the following:

> [...] the victim was shot by an individual who she recognized but did not know his name. After the shooting, the victim was shown several photographs but did not recognize any as the shooter or the accomplice known as "D." The victim later saw a photograph of the shooter, Defendant, on the Union County jail website and contacted law enforcement. Law enforcement then showed the victim several photographs of individuals believed to have been involved in the incident. The victim again identified Defendant as the individual who shot her. At trial, the victim offered an in-court identification of Defendant as the individual who shot her. The reliability of the victim's identification of Defendant as the shooter is further bolstered by her identification of Turner as an accomplice, who later pleaded guilty for his role in the offense. Accordingly, even if trial counsel had moved to suppress the victim's identification of Defendant as the shooter, such identification was sufficiently reliable to allow for admissibility. Further, Defendant has failed to specify on what grounds such identification would be deemed inadmissible.

See Id.

Although Fields benefits from Martinez, it did not eviscerate 28 U.S.C. 2254(d) and the deference due to the adjudication of a claim made by a state court, including a trial court. Because a claim of ineffective assistance of counsel is governed by Strickland, a general standard, a state court has even greater latitude to determine whether the standard has been met. See Knowles v. Mirzayance, 556 U.S. 111 (2009). Taken together, 28 U.S.C. 2254(d) and Strickland establish a doubly deferential standard of review. See Williams v. Roper, 695 F.3d 825 (8th Cir. 2012).

Giving the trial court's adjudication of sub-claim 5[A] the deference the adjudication is due, for the reasons that follow, the adjudication did not result in a decision that contradicts, or involves an unreasonable application of, Strickland. The adjudication was also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

New's identification of Fields was the only evidence tying him to the robbery and shooting.[19] Attorney Nelson did, in fact, challenge New's pre-trial identification of Fields, but Attorney Nelson did so in the context of a pre-trial motion in limine, not a pre-trial motion to suppress. The trial court observed that the challenge "would have been more properly brought in a [m]otion to [s]uppress," see Docket Entry 78-2 [Exhibit A1] at CM/ECF 93, but nevertheless addressed the challenge. The court rejected the challenge, and refused to exclude New' pre-trial identification of Fields, because New's identification was not hearsay and was sufficiently reliable, reliability being the linchpin for determining the admissibility of identification testimony. See e.g., Manson v. Brathwaite, 432 U.S. 98 (1977).

---

[19]    Pepper could not identify any of the assailants, and there was no forensic evidence implicating Fields in the robbery and shooting.

In light of the fact that Attorney Nelson did, in fact, challenge New's pre-trial identification of Fields, and the trial court overlooked the context in which the challenge was made, the court could and did find that Attorney Nelson's performance was not deficient. Moreover, as the court could and did find in denying Fields' Rule 37 petition, even had Attorney Nelson filed a motion to suppress, the court would have denied the motion because New's identification of Field was "sufficiently reliable." See Docket Entry 67-1 [Exhibit 16] at CM/ECF 11.

Sub-claim 5[D]. Fields maintains in sub-claim 5[D] that Attorney Nelson was ineffective because he failed to complete the impeachment of New with her prior inconsistent statements. See Docket Entry 75 at CM/ECF 74-76. Specifically, Fields maintains that Attorney Nelson failed to offer evidence to impeach New's embellishment of her "opportunity to view the shooter" and to impeach her embellishment of her "identification of Fields by adding facts not offered at the time of the crime," see Docket Entry 75 at CM/ECF 75, such as New having testified that she attended school with Fields. It is also Fields' contention that Attorney Nelson failed to offer evidence of New having "previously offered a description of the three men that did not match Fields insofar as Fields would have been significantly older at the time of the shooting." See Id.

61

The record reflects that Attorney Nelson devoted most of his cross-examination of New to exploring why she did not contact law enforcement officers when she noticed three men loitering near her house. Attorney Nelson also briefly explored the circumstances surrounding New's conversation with one of the men—a man she identified as Fields—during the robbery and shooting. Additionally, Attorney Nelson briefly touched on New's subsequent interview with Detective Jared Primm ("Detective Primm") and Officer Sexton Hall ("Officer Hall") about that conversation.

In Fields' Rule 37 petition, he challenged Attorney Nelson's failure to "investigate and/or present evidence and/or testimony that would discredit New's eyewitness identification [...]" and failure to "investigate New's claim that she attended school with Fields from elementary to high school." See Docket Entry 66-6 [Exhibit 12] at CM/ECF 8. With respect to the assertions, the trial court found that Fields offered "no theories on what grounds [Attorney Nelson] could have discredited [New's] identification of [Fields] as the shooter" and failed to provide "any factual support" for the assertion that Attorney Nelson failed to investigate New's claim that she attended school with Fields. See Docket Entry 67-1 [Exhibit 16] at CM/ECF 8. Additionally, the court found the following with respect to Attorney Nelson's cross-examination of New:

[...] Defendant then argues that trial counsel failed to call witnesses who could have impeached the victim's testimony. In a footnote, Defendant states that trial counsel failed to call Jared Primm and Sexton Hall, however, he provides absolutely no information on how they could have impeached the victim. For ineffective-assistance-of-counsel claims based on failure to call a witness, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. [...] Defendant has failed to do so here, and therefore this claim also fails.

In a footnote, Defendant also alleges that trial counsel failed to introduce "Defendant's Exhibit 1" into evidence, which he claims would have cast doubt on some of the victim's testimony. "Defendant's Exhibit 1" was not attached to the Petition and it is unclear what exactly is contained in such exhibit. As a result, Defendant cannot now claim that the failure to introduce an exhibit was prejudicial error when the exhibit is unknown.

See Id. at 8-9.

The undersigned's review of sub-claim 5[D] is constrained by Cullen v. Pinholster, 563 U.S.170 (2011), and Shinn v. Ramirez, 142 U.S. 1718 (2022). In Pinholster, the United States Supreme Court held that review under 28 U.S.C. 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. Although Fields correctly notes that Pinholster is irrelevant when making a de novo review of a claim, here, a de novo review will not be made. Instead, deference will be accorded the trial court's adjudication of the sub-claim.

In <u>Shinn</u>, the United States Supreme Court held that under 28 U.S.C. 2254(e)(2), a federal court may not consider evidence beyond the state court record based on ineffective assistance of state post-conviction counsel. It is a rare instance in which a federal court can consider evidence that a petitioner did not first present to the state courts.

Fields offers facts and argument in support of sub-claim 5[D] that he did not first present to the trial court. Given <u>Pinholster</u> and <u>Shinn</u>, the facts and argument cannot be considered, and review of this sub-claim is limited to the record before the trial court. "This helps ensure that federal courts sitting in habeas are not an alternative forum for trying facts and issues which a prisoner made insufficient effort to pursue in state proceedings." <u>See</u> <u>Dennis v. Payne</u>, No. 4:21-cv-00037-JM-ERE, 2021 WL 2581603, 3 (E.D. Ark. June 23, 2021) (internal quotation marks and citations omitted).

Given the record before the trial court, and giving the court's adjudication of sub-claim 5[D] the deference the adjudication is due, for the reason that follows, the adjudication did not result in a decision that contradicts, or involves an unreasonable application of, <u>Strickland</u>. The adjudication was also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The trial court could and did find that Fields offered little in the way of explanation or factual support for sub-claim 5[D]. Specifically, the court could and did find that Fields failed to explain on what grounds Attorney Nelson should have challenged New's pre-trial identification of Fields.[20] Moreover, the court could and did find that Fields failed to offer factual support for challenging Attorney Nelson's alleged failure to investigate whether New attended school with Fields; failed to explain how Detective Primm and Officer Hall would have impeached New's testimony; and failed to explain why the failure to introduce "Exhibit 1," an exhibit that was not identified, was prejudicial.

The undersigned recognizes that it might be debatable whether the trial court's adjudication of sub-claim 5[D] was "on the merits" and recognizes that it might be debatable whether a review of the sub-claim is constrained by Pinholster and Shinn. To the extent the adjudication was not "on the merits" and is not constrained by Pinholster and Shinn, the undersigned has reviewed the sub-claim de novo. Having done so, the undersigned is not convinced that Fields has satisfied the performance prong of Strickland.

---

[20]     It is worth noting again that Attorney Nelson did, in fact, challenge New's pre-trial identification of Fields. The trial court admitted New's identification of Fields as the identification was sufficiently reliable.

"The cross-examination of a witness is a delicate task." See Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997). In that case, the United States Court of Appeals for the Eighth Circuit additionally observed the following:

> [...] Courts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel. [...] We have recently observed that "there are a few, if any, cross-examinations that could not be improved upon. If that were the standard of constitutional effectiveness, few would be the counsel whose performance would past muster." [...] [Sic]

See Id. (internal citations omitted).

Attorney Nelson's cross-examination of New was certainly not a model of skillful, thorough cross-examination. Attorney Nelson devoted his cross-examination to exploring why New did not contact law enforcement officers earlier, the circumstances surrounding New's conversation with the person she identified as Fields, and New's interview with two officers. Attorney Nelson devoted no attention to such matters as any inconsistent statements New may have made about the incident or whether her ability to view her assailants was impaired. Notwithstanding those shortcomings, the undersigned is not prepared to find that Attorney Nelson's cross-examination of New amounted to incompetence.

Sub-Claim 5[F]. Fields maintains in sub-claim 5[F] that Attorney Nelson was ineffective because he failed to investigate evidence of third-party guilt and evidence of Fields' background. See Docket Entry 75 at CM/ECF 77-80. Specifically, Fields maintains that an adequate investigation would have undermined New's testimony in two respects: first, "Dee" or "D" and Turner are the same person, and Turner did not know Fields; and second, New did not attend elementary school through high school with Fields, but they only spent two years together in school.

In Fields' Rule 37 petition, he challenged Attorney Nelson's failure to investigate a defense of third party culpability and investigate New's assertion that she attended elementary school through high school with Fields. The trial court rejected the assertion that Attorney Nelson failed to investigate a defense of third party culpability, finding the following:

> [...] Defendant failed to show that there is a reasonable probability, but for trial counsel's failure to investigate, that the result of the trial would have been different. In fact, Defendant is unable to satisfy Strickland's prejudice prong because "D" was only an accomplice of Defendant. The victim had been clear in identifying Defendant as the shooter and "D" was merely an accomplice. As a result, trial counsel's failure to investigate and locate "D" would not have changed the outcome of Defendant's trial as it was never alleged or asserted that "D" was the shooter rather than Defendant. Instead, it was always asserted that Defendant and "D" had separate and distinct roles.

See Docket Entry 67-1 [Exhibit 16] at CM/ECF 7. With respect to Fields'
contention that Attorney Nelson failed to investigate New's assertion of
having attended school with Fields from elementary school to high school,
the trial court found that Fields failed to offer any factual support for the
contention.

Given the record before the trial court, and giving the adjudication
of sub-claim 5[F] the deference the adjudication is due, for the reason that
follows, the adjudication did not result in a decision that contradicts, or
involves an unreasonable application of, Strickland. The adjudication was
also not based on an unreasonable determination of the facts in light of
the evidence presented in the state court proceeding.

The trial court could and did find that Fields failed to satisfy the
prejudice prong of Strickland with respect to the first part of sub-claim
5[F], i.e., Attorney Nelson failed to investigate a defense of third party
culpability. Specifically, the court could and did find that New testified she
was shot by Fields, and "Dee" or "D" was merely believed to be an
accomplice to the robbery and shooting. As a result, the court could and
did find that Attorney Nelson's failure to investigate and locate "Dee" or
"D" did not change the outcome of the trial.

Fields repeatedly maintains that had Attorney Nelson investigated and located "Dee" or "D," and determined that he is Turner, it would have changed the outcome of the trial because Turner would have exonerated Fields. The problem, though, is that the state courts could and did find that Turner remembered nothing about the robbery and shooting.

The trial court could and did also find that Fields failed to satisfy the prejudice prong of Strickland with respect to the second part of sub-claim 5[F], i.e., Attorney Nelson failed to investigate New's assertion of having attended school with Fields. Specifically, the court could find that Fields failed to offer any factual support for his contention.

Because it might be debatable whether the trial court adjudicated the second part of sub-claim 5[F] "on the merits," the undersigned has reviewed that part of the sub-claim de novo. Having done so, and recognizing that the touchstone for a trial attorney's investigative efforts is reasonableness, see e.g., Strickland v. Washington, 466 U.S. at 690-691, the undersigned is not convinced that Fields has satisfied the prejudice prong of Strickland. Accepting that New attended school with Fields for two years, but did not attend school with him from elementary school through high school, it is difficult to envision how Attorney Nelson's failure to investigate and discover that fact changed the outcome of the trial.

Sub-claim 5[I]. Fields maintains in sub-claim 5[I] that Attorney Nelson was ineffective because he failed to request safeguards to prevent the jury from learning Fields had been in jail. See Docket Entry 75 at CM/ECF 81-83. In support of the sub-claim, Fields notes that there were "at least seven instances at trial" when the jury was reminded he was incarcerated at the time he was identified by New. See Docket Entry 75 at CM/ECF 82.

In Fields' Rule 37 petition, he challenged Attorney Nelson's failure to request safeguards so that the jury would not learn Fields was in jail. The trial court rejected the challenge, finding in part the following:

> [...] Defendant does not specify what "safeguards" he believes trial counsel should have requested. Further, Defendant does not specify what testimony or evidence was admitted on this issue so as to prejudice Defendant. At the time of trial, Defendant was charged with numerous felony violations and it would only be logical for the jury to assume Defendant would have been in jail for such charges. However, despite such charges, the State did not make an issue out of the fact that Defendant was currently in jail. Further, Defendant did not appear at trial in jail clothing but in civilian clothing. With regard to the victim's testimony that she identified Defendant from the Union County jail website, trial counsel may well have chosen not to object in order to avoid drawing the jury's attention to such testimony. [...]

See Docket Entry 67-1 [Exhibit 16] at CM/ECF 12.

Given the record before the trial court, and giving the court's adjudication of sub-claim 5[l] the deference it is due, the adjudication did not result in a decision that contradicts, or involves an unreasonable application of, Strickland. The adjudication was also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

The trial court could and did find that Fields failed to identify the specific safeguards Attorney Nelson should have sought. Although Fields maintains that the court should have limited the testimony the prosecution could have offered, it is difficult to envision how the court could have done so without preventing the prosecution from presenting a portion of its case. How New came to identify Fields—by viewing his photograph on a website maintained by the Union County Sheriff's Office—was part of the prosecution's case, and New's testimony about her identification of Fields necessarily disclosed to the jury that he had been in custody. Moreover, although the court did not acknowledge United States Supreme Court precedent on the underlying question relevant to safeguards, see, e.g., Estelle v. Williams, 425 U.S. 501 (1976) (right to fair trial includes right to not be compelled to stand trial in identifiable prison clothes), the adjudication is not inconsistent with that precedent.

Sub-claim 5[J]. Fields maintains in sub-claim 5[J] that Attorney Nelson was ineffective because he failed to object to the prosecution's misstatements of the law with respect to parole eligibility. See Docket Entry 75 at CM/ECF 83-84. In support of this rather involved sub-claim, Fields specifically alleges that prosecutor Jeffrey Rogers ("Rogers") misstated the law in the following respect:

> The jury recommended the following terms of imprisonment for Fields: 15 years for aggravated robbery; 20 years for terroristic act; 10 years for battery in the first degree (with one (1) year for the enhancement); two (2) years each on the three (3) counts of aggravated assault, although the jury also recommended one (1) year on the enhancement for two (2) of those counts. [...] The court imposed the recommended sentences consecutively, totaling 54 years. [...]

> Throughout closing argument during the penalty phase, prosecutor Jeffrey Rogers repeatedly misstated the law regarding parole eligibility, instructing the jury that Fields would only serve the minimum sentence allowed by law on each charge rather than merely being parole-eligible at those times. [...] Prosecutor Rogers implied that Fields would definitely parole at those minimum parole-eligible dates. Prosecutor Rogers was unequivocal, telling the jury "[i]t's simply doing the math, but the number of years you want him to serve keep it in your mind and do the math and put the bigger number in there." [...]

> The prosecutor misstated the law in an effort to get the jury to set higher sentences, [...] These misstatements were prejudicial to the outcome of the penalty phase as Fields received greater-than-minimum sentences for each one of his six convictions.

Sadly, Fields' trial counsel failed to object to the prosecutor's misstatements regarding parole eligibility [...]. If trial counsel had objected, the judge would have admonished the jury that Fields would not necessarily make parole at the first opportunity, and the jury would have given Fields more lenient sentences.

Since the circuit court imposed the sentences the jury ultimately recommended, one must conclude that the circuit court would have imposed the recommended sentences even if they were more lenient. Hence, trial counsel's failure to object prejudiced Fields by causing him to receive a longer sentence.

<u>See</u> Docket Entry 75 at CM/ECF 83-84 [emphasis in original].

As a part of Fields' direct appeal, he alleged that the trial court erred when it allowed Rogers to misstate the law with respect to parole eligibility. The state Court of Appeals rejected Fields' assertion because Attorney Nelson did not object. The state Court of Appeals alternatively considered whether the trial court was obligated to have intervened without Attorney Nelson's objection. The state Court of Appeals found that the trial court was not obligated to have done so for the following reason:

[...] The circuit court instructed the jury regarding sentencing, parole, transfer, and meritorious good time just before the closing argument. The prosecuting attorney began by saying, "When you're talking about transfer eligibility we're talking about parole. It's a term we've all heard for years and years about when will they get eligible for parole." In describing sentencing possibilities for the first crime discussed-- aggravated robbery--the prosecutor said:

Under the parole eligibility on aggravated robbery he is required to serve seventy percent of whatever time you pick between ten and forty and including ten and forty, life is life. If you write life in that line, which you have every right to do as jurors, whatever number of the word life in that line is what your sentence is. If you put a term of years, seventy percent of whatever number you write in that blank is what [sic] he should make parole if he does what he's supposed to do in prison. So if you want him to serve seven years, you impose ten.

If you want him to serve fourteen years, you write twenty. It's just simple math, .70 times the number. Thirty is twenty-one. If you want him to serve twenty-one years you write thirty in the blank. If you want him to serve twenty-eight years, you write forty in there. It is just doing the simple math. It's complicated and hearing the instructions it's hard to wrap your head around it because it's a whole new language for ya'll. You've not been in this situation. If you write life, it means life.

[...]

Here, there is no basis [...] to reverse the sentences based on the prosecutor's closing argument. Although in some portions of the prosecutor's closing argument he mentions release eligibility and good time, we note that some of his comments could be viewed as essentially telling the jury to impose a sentence under the assumption that Fields will be paroled at the earliest possible eligibility date. While the prosecutor may comment on the law applicable to parole, he or she is not allowed to misstate the law applicable to parole. [...] Neither the State nor Fields has cited any Arkansas case that discusses the issue of a prosecutor suggesting to the jury that the defendant would be released at the earliest parole date. [...]

See Fields v. State, 574 S.W.3d at 207–208.

In Fields' Rule 37 petition, he challenged Attorney Nelson's failure to object to Rogers' misstatements of the law with respect to parole eligibility. The trial court rejected the challenge, finding, in part, the following:

> [...] While a failure to object during a closing statement may constitute ineffective assistance of counsel where such statements are egregious, here, Defendant has not made such an allegation and, in fact, is unable to do so. [...] In fact, on direct appeal, the Court of Appeals found that it had not been presented with any authority which would prohibit a prosecutor from suggesting to the jury that the defendant would be released at the earliest parole date. Fields v. State, 2019 Ark. App. 162, 4. Accordingly, Defendant's trial counsel could not have erred when he failed to object to [the] prosecutor's statements, where the Court of Appeals has already found that such statements were proper and, thus, there was no basis for an objection.

See Docket Entry 67-1 [Exhibit 16] at CM/ECF 14.

Giving the trial court's adjudication of sub-claim 5[J] the deference the adjudication is due, for the reason that follows, the adjudication did not result in a decision that contradicts, or involves an unreasonable application of, Strickland. The adjudication was also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Sub-claim 5[J], at its core, involves Rogers' repeated remarks that Fields would only serve "the minimum sentences allowed by law on each charge rather than merely being parole-<u>eligible</u> at those times." <u>See</u> Docket Entry 75 at CM/ECF 84 [emphasis in original]. Fields maintains that Rogers "implied" Fields would "definitely parole at those minimum parole-eligibility dates," and the remarks caused him to receive "greater-than-minimum sentences for each one of his six convictions." <u>See</u> <u>Id</u>.

Much of sub-claim 5[J] is based on speculation.[21] Regardless, this much is clear: the trial court could and did find that "it had not been presented with any authority which would prohibit a prosecutor from suggesting to the jury that the defendant would be released at the earliest parole date." <u>See</u> Docket Entry 67-1 [Exhibit 16] at CM/ECF 14. Fields has certainly not cited any such authority. Because the court was not offered any authority on the proposition, the court could and did find that Rogers did not misstate the law or that Attorney Nelson erred when he failed to object to Rogers' remarks.

---

[21]   For example, Rogers believed Fields would only serve the minimum sentences and implied that Fields would definitely parole at the minimum parole-eligibility dates. Rogers, of course, could not know those things. Fields, on the other hand, believes that Rogers' remarks caused Fields to receive longer sentences; that had Attorney Nelson objected to Rogers' remarks, the trial court would have admonished the jury that Fields would not necessarily make parole at the first opportunity; and that had Attorney Nelson objected and the trial court so admonished the jury, Fields would have received more lenient sentences. Fields cannot know those things.

Case 4:20-cv-00351-KGB   Document 91   Filed 03/06/23   Page 77 of 80

Sub-claim 5[K]. Fields maintains in sub-claim 5[K] that Attorney Nelson was ineffective because he failed to proffer a jury instruction to allow the jury to recommend concurrent sentencing, specifically, AMCI 2d 9112 ("9112").[22] See Docket Entry 75 at 85-86. In support of the sub-claim, Fields alleges the following:

> [...] Had the jury been given the ability to make a recommendation of concurrent sentencing, Fields could have instead been sentenced to 20 years, a sentence 34 years less than what the court ultimately imposed. [...]

> The failure to submit the instruction was not strategic. In his plea to the jury, trial counsel asked them to "[g]ive [Fields] the minimum on everything. You also have the choice to either run ... I'm not sure that instruction was given." [...] The judge responded: "The instruction wasn't given, no. It wasn't prepared and it wasn't offered." [...] It is clear counsel intended to ask the jury to recommend the sentences run concurrent, a request he later made to the judge. [...] ("Your honor, in light of the sentence, I would ask that the Court consider at least some of the counts concurrent to each other as opposed to all consecutive.") However, the jury was unable to make such a recommendation because counsel failed to offer the model instruction. Instead, the jury was told, in response to their note to the judge, that the decision on how sentences run is "made in the discretion of the court." [...]

---

[22]     9112 includes, in part, the following provisions:

"[...] If you sentence (defendant) to more than one term of imprisonment, you may also make a recommendation that any two or more terms of imprisonment be consecutive. A sentence to consecutive terms of imprisonment means that the terms of imprisonment will be added together to determine the total term of imprisonment.

"You are advised that a recommendation by you that terms of imprisonment be consecutive will not be binding on the court."

> There can be no strategy in this failure; there is no benefit to the defense not to offer it. And the jury's question reveals its concern about the overall length of Fields' sentences. Had the jury been able to recommend concurrent sentences, the judge would have imposed the sentences concurrently, reducing Fields' sentence by 34 years.

See Docket Entry 75 at CM/ECF 85-86.

As a part of Fields' direct appeal, he alleged that the trial court erred when it sentenced him to consecutive terms of imprisonment. The state Court of Appeals, though, rejected the challenge.

In Fields' Rule 37 petition, he challenged Attorney Nelson's failure to proffer 9112. The trial court rejected the challenge, finding the following:

> [...] Despite the fact that the instruction was not given, the jury was aware of the possibility that they could recommend that the sentences run consecutively. In fact, the jury sent a note to the Court asking whether the sentences would be run concurrent or consecutive. The Court responded that it was a decision to be made in the discretion of the Court. Further, trial counsel did ask the court during sentencing to consider making at least some of the sentences concurrent as opposed to consecutive. [...] Ultimately, it is well established that the question whether sentences should run consecutively or concurrently lies solely within the province of the trial court. [...] As a result, Defendant fails to show how trial counsel's failure to proffer of AMCI 9112 had a reasonable probability of changing the outcome, [...]

See Docket Entry 67-1 [Exhibit 16] at CM/ECF 14-15.

Giving the trial court's adjudication of sub-claim 5[K] the deference the adjudication is due, for the reason that follows, the adjudication did not result in a decision that contradicts, or involves an unreasonable application of, Strickland. The adjudication was also not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

Sub-claim 5[K], pared to its essence, involves Fields' belief as to what the jury would have done had Attorney Nelson proffered 9112 and the instruction been given. The sub-claim also involves Fields' belief as to what the trial court would have done had the jury recommended concurrent sentences.

Like much of sub-claim 5[J], much of sub-claim 5[K] is based on speculation. Regardless, this much is clear: the trial court could and did find that the jury was aware of its options in recommending either concurrent or consecutive sentences as the jury sent a note to the court during the deliberations. Moreover, the court entertained Attorney Nelson's request for concurrent sentencing but correctly noted that it was entirely within the court's discretion how Fields would be sentenced. Given the foregoing, the court could and did find that Attorney Nelson did not err when he failed to proffer 9112.

IX. <u>CONCLUSION</u>. This case is extremely complicated as evidenced by the size of the record and the length of this Recommendation. The trial that resulted in Fields' convictions was far from perfect, and the evidence of his guilt is certainly not overwhelming. Given existing United States Supreme Court precedent, though, relief pursuant to 28 U.S.C. 2254 is unavailable.  It is therefore recommended that Fields' petition be dismissed, and all requested relief be denied. Judgment should be entered for Payne. The undersigned makes no recommendation as to whether a certificate of appealability should be granted with respect to one or more of Fields' claims.

DATED this 6th day of March, 2023.


_____
   UNITED STATES MAGISTRATE JUDGE